UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN DANIEL ORR,[1] <br><br>Petitioner, <br><br> v. <br><br> CALVIN JOHNSON,[2] et al., <br><br> Respondents. | Case No. 2:17-cv-02908-RFB-EJY <br><br> **ORDER** |

Petitioner Steven Daniel Orr, who pleaded guilty to conspiracy to commit robbery and robbery with the use of a deadly weapon, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (See ECF Nos. 3, 16-10.) This matter is before this court for adjudication of the merits of Orr's second amended petition, which alleges that the prosecution breached his plea agreement by not ensuring that his accrued parole credits applied toward his eligibility for parole, and there was an error in the application of his parole credits. (ECF No. 51.) For the reasons discussed below, this court denies the petition and a certificate of appealability.

**I.  BACKGROUND**[3]

On April 6, 1999, at approximately 2:30 a.m., Orr entered Duffy's Tavern in Las Vegas, Nevada armed with a semiautomatic handgun after his co-defendant, Jeda Greene, gained entry to

---

[1] Orr's name is spelled "Orre" in some state-court documents.

[2] The state corrections department's inmate locator page states that Orr is currently incarcerated at High Desert State Prison. Calvin Johnson is the warden for that facility. At the end of this order, the court directs the clerk to substitute Calvin Johnson as a respondent for the prior respondent Brian Williams, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

[3] The court makes no credibility findings or other factual findings regarding the truth or falsity of the summary of the evidence from the state court.

the bar by pretending to be a customer and ringing the doorbell. (ECF No. 15-2 at 15.) Orr ordered the bartender to give him money from the bar's cash register, and the bartender complied. (Id.) Orr then ordered the bartender, two customers, and Greene to the back room of the bar. (Id.) Orr left the building and was seen entering a red Cadillac driven by his other co-defendant, Anthony Redmond. (Id.)

On April 16, 1999 (hereinafter "1999 Case"), Orr was charged with burglary while in possession of a firearm, conspiracy to commit robbery, robbery with the use of a deadly weapon, three counts of first-degree kidnaping with the use of a deadly weapon, carrying a concealed weapon, and possession of stolen property. (ECF No. 15-2 at 4–8.) Orr agreed to plead guilty to conspiracy to commit robbery and robbery with the use of a deadly weapon in return for the prosecution's promise not to oppose Orr's request that his sentences run concurrent with another pending case.[4] (ECF No. 14-25 at 3.) Orr executed a plea agreement and pleaded guilty. (ECF Nos. 16-1, 16-3.) Orr was later sentenced to 24 to 60 months for conspiracy to commit robbery and 72 to 180 months for robbery with an additional consecutive 72 to 180 months for the deadly weapon enhancement. (ECF No. 16-10.) The sentences were ordered to run concurrently. (Id.)

On December 12, 2006, Orr had a parole hearing on his robbery sentence. (ECF No. 69 at 5.) The parole board denied parole until the sentence expired on April 4, 2008. (Id.; see also ECF No. 66 at 22, 24.) On April 5, 2008, Orr started serving his sentence for the deadly weapon enhancement. (ECF No. 38-5 at 18.) The parole board granted Orr parole on the deadly weapon enhancement sentence effective August 1, 2015. (Id.)

---

[4] In that other case—Case No. C150664—Orr was sentenced to 24 to 60 months for robbery plus a consecutive 24 to 60 months for a deadly weapon enhancement. (ECF No. 16-18.) That sentence was ordered to run concurrently with the instant case—Case No. C158563.

2

On January 26, 2016, Orr was charged with crimes that occurred on December 31, 2015 (hereinafter "2015 Case"): conspiracy to commit burglary, burglary while in possession of a firearm, conspiracy to commit robbery, robbery with the use of a deadly weapon, two counts of assault with a deadly weapon, ownership or possession of a firearm by a prohibited person, and possession of stolen property. (ECF No. 37-1 at 5–8.) Orr pleaded guilty to robbery with the use of a deadly weapon, and the parties stipulated to a habitual-criminal sentence of 60 to 150 months. (ECF No. 37-4.) The state district court entered judgment accordingly. (ECF No. 38-1.)

Due to Orr's new charges, on March 1, 2016, the parole board revoked Orr's parole in the 1999 Case until the expiration of that sentence. (ECF No. 69 at 14; <u>see also</u> ECF No. 66 at 31.) That sentence expired on November 9, 2016, so Orr commenced serving his sentence for the 2015 Case on November 10, 2016.[5] (<u>See</u> ECF No. 38-8 at 3.)

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5] This court previously concluded that Orr's federal habeas claims, which concern the 1999 Case, are not moot, explaining:

> Orr is currently serving a prison sentence that runs consecutive to the sentence at issue in this case. If the Court concludes that the prosecution did breach the plea agreement, and if the Court conditionally grants relief based upon Orr being allowed to withdraw his plea and plead to the original charges, then the current sentence's dates of commencement and expiration might advance.

(ECF No. 50 at 12.)

3

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

In ground 1, Orr alleges that his Fourteenth Amendment right to due process was violated due to a breach of the plea agreement. (ECF No. 51 at 3.) Orr contends that the prosecution verbally promised him during a discussion off the record at the preliminary hearing that his accrued credits would apply toward his eligibility for parole pursuant to Nev. Rev. Stat. § 209.4465(7)(b), but because the Nevada Department of Corrections ("NDOC") failed to fulfill that promise and abide by the requirements of Nev. Rev. Stat. § 209.4465(7)(b), the prosecution breached the plea agreement. (Id. at 3–6; ECF No. 70 at 2.). Relatedly, in ground 2, Orr alleges that his Fifth, Sixth, and Fourteenth Amendment rights to due process were violated because the NDOC failed to calculate and apply his parole credits to his sentence pursuant to Nev. Rev. Stat. § 209.4465(7)(b), resulting in his parole hearing occurring two years late. (Id. at 10–11.)

At the time the instant offense was committed in 1999, Nev. Rev. Stat. § 209.4465(7)(b) provided that "[c]redits earned . . . [a]ppl[ied] to eligibility for parole unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole." 1997 Nev. Stat., ch. 641, § 4, at 3175.[6]

### A.  State court determination

In affirming the denial of Orr's state habeas petition filed on September 20, 2016, the Nevada Court of Appeals held:

> Orre [sic] claims the district court erred by construing his petition as a challenge to the computation of time and denying it as moot instead of addressing the claim he actually raised, that the State breached the guilty plea agreement by failing to deduct statutory credits from his minimum sentence as required by the statute in effect at the time of his crime. Even assuming Orre is correct and the

---

[6] The Nevada Supreme Court has held that the Nevada Department of Corrections had been interpreting Nev. Rev. Stat. § 209.4465(7)(b) incorrectly. See Vonseydewitz v. LeGrand, 2015 WL 3936827 (Nev. June 24, 2015); Williams v. State Dep't of Corr., 133 Nev. 594, 402 P.3d 1260 (2017).

5

    district court's reason for denying his petition was wrong, we conclude the district court reached the right result and Orre is not entitled to relief. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (this court will affirm the judgment of a district court if it reached the right result albeit for a wrong reason).

    Orre's petition was untimely because it was filed more than 16 years after the remittitur on direct appeal was issued on December 15, 1999, and it was successive because he had previously filed five postconviction petitions for writ of habeas corpus. *See* NRS 34.726(1); NRS 34.810(3); *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005) ("Application of the statutory procedural default rules to postconviction habeas petitions is mandatory.").

    Orre claimed he had good cause to excuse the procedural bars because he was unaware the Nevada Department of Corrections was misapplying statutory good time credits until he read about an unpublished Nevada Supreme Court decision in a prison press release. We conclude Orre's claim does not demonstrate good cause because he has not shown "that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). Accordingly, we conclude the district court reached the right result.

(ECF No. 40-4 at 2–4.)

Because the Nevada Court of Appeals did not address the merits of Orr's claims, this court reviews Orr's grounds *de novo*.[7] 28 U.S.C. § 2254(d); James v. Ryan, 733 F.3d 911, 914 (9th Cir. 2013) (explaining that 28 U.S.C. § 2254(d) "does not apply when a state court does not reach the merits of a federal claim," and in that situation, the federal habeas court reviews the claim de novo); see also Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004) (explaining that under AEDPA, an adjudication on the merits is "a decision finally resolving the parties'

---

[7] "As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted) (alterations in original). However, this bar may be lifted "if the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law." Id. (internal quotation marks omitted) (alterations in original). This court has already determined that Orr has demonstrated cause and prejudice to excuse the procedural default. (ECF No. 50 at 11.)

claims . . . that is based on the substance of the claim advanced, rather than on a procedural, or other, ground" (alteration in original)).

### B. Ground 1—alleged breach of the plea agreement

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971); see also Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985) ("As a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected."); United States v. Read, 778 F.2d 1437, 1440–41 (9th Cir. 1985) ("A prosecutor's failure to comply with the terms of a plea agreement 'can in some circumstances render a defendant's plea involuntary and thereby undermine the constitutional validity of a conviction based upon the plea.'"). "A plea bargain is contractual in nature and is measured by contract-law standards." Read, 778 F.2d at 1441.

Orr alleges that in exchange for his guilty plea, "the state 'verbally' promised [him] that statutory credit[s]" pursuant to Nev. Rev. Stat. § 209.4465(7)(b) "would automatically apply to the sentences imposed which would qualify [him] for the possibility of a [sic] early parole – if in the event the sentencing court pronounced a sentence larger than the prescribed minimum term." (ECF No. 51 at 3–4.) Orr fails to support this allegation with evidence other than his own self-serving statements. See, e.g., Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim).

No such promise is contained in the transcript of the waiver of the preliminary hearing, the transcript of the plea hearing, or the guilty plea agreement. (See ECF Nos. 14-25 at 3 (explaining that, in accordance with the plea agreement, the prosecutor would "file an information charging him with [only] conspiracy to commit robbery and robbery with use," would not "oppose concurrent time" with another case, and would "have the right to argue" at sentencing); 16-3 (explaining that, in accordance with the plea agreement, the prosecutor would dismiss two other cases, would not be "oppos[ing] concurrent time [with Orr's other case]," and would retain "the right to argue" at sentencing); 16-1 (explaining the prosecution's promises under the plea agreement as follows: "[t]he State has agreed to retain the right to argue at rendition of sentence, but will not oppose concurrent time with [Orr's other case]. Additionally, the State will not oppose dismissal of [two other cases] at rendition of sentence")). And, in fact, Orr's signed guilty plea agreement provided that he was "signing the agreement voluntarily, after consultation with [his] attorney, and [he was] not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement." (ECF No. 16-1 at 5.)

Orr argues that the terms of Nev. Rev. Stat. § 209.4465(7)(b) should be implied in the plea agreement. (ECF No. 51 at 7–8; ECF No. 70 at 6.) This court is not persuaded. Nev. Rev. Stat. § 209.4465(7)(b) falls within the Nevada Revised Statutes' chapter on the Department of Corrections. Applying contract law, Orr fails to establish that the prosecution had authority to bind the NDOC such that the terms of Nev. Rev. Stat. § 209.4465(7)(b) could be implied in the plea agreement. See, e.g., Johnson, 769 F.2d at 633 (explaining that the general rule that "promises made during plea-bargaining . . . be respected . . . is typically subject to [the] condition[ that] the agent must be authorized to make the promise").

Because Orr fails to demonstrate that the prosecution breached the plea agreement, Orr is not entitled to federal habeas relief for ground 1.[8]

### C. Ground 2—due process violation for failure to apply parole credits

Orr's claim is based on the law governing accrual of credits towards his sentences and the application of those credits towards parole eligibility. Orr explains that "if the NDOC had properly applied parole credits the amount of 738 days to [his] consecutive term [for the use of a deadly weapon enhancement, he] would have appeared before the parole board" approximately two years earlier. (ECF No. 51 at 5.)

"The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Liberty interests can arise under the Constitution or state law. Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974) ("We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State."); see also Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) "[S]tate law may create enforceable liberty interests in the prison setting."). Regarding the former, the Supreme Court has

---

[8] Orr also appears to argue that he is entitled to relief because the state district court failed to canvass him about Nev. Rev. Stat. § 209.4465(7)(b) or ask if additional promises were made to him when it conducted his guilty plea canvass, which would have prompted a discussion about the prosecution's verbal promise on the record. (ECF No. 51 at 4–5.) Orr does not argue that he was unaware of Nev. Rev. Stat. § 209.4465(7)(b) or that, had he been property canvassed on Nev. Rev. Stat. § 209.4465(7)(b) by the state district court, he would not have pleaded guilty. Consequently, Orr fails to establish how this alleged omission in the state district court's canvass made his guilty plea unknowing, unintelligent, or involuntary. See Brady v. United States, 397 U.S. 742, 748 (1970); see also United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011) ("[A] court conducting a plea colloquy must advise the defendant of the direct consequences of his plea but need not advise him of all the possible collateral consequences of the plea" (internal quotation marks omitted)).

held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7; see also Wolff, 418 U.S. at 557 ("[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.").

As for state-created liberty interests, they are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). "Whether a state statute provides such a protectable entitlement depends on the structure and language of the statute, as well as the state courts' interpretation of the scope of the interest." Bergen v. Spaulding, 881 F.2d 719, 721 (9th Cir. 1989). And "[s]ignificant to the determination of whether parole or other early release statutes create such a protectable liberty interest is their use of mandatory language, including use of the commanding term 'shall.'" Id.; see also Moor v. Palmer, 603 F.3d 658, 661 (9th Cir. 2010) ("It is true that a state parole statute may create a liberty interest, even if the parole decision involves subjective and predictive considerations, provided that the statute contains mandatory language and imposes substantive limitations on the discretion of those making the parole decision.").

The Ninth Circuit Court of Appeals has concluded that "Nevada's statutory parole scheme . . . expressly disclaims any intent to create a liberty interest." Moor, 603 F.3d at 661 (citing Nev. Rev. Stat. § 213.10705 ("The Legislature finds and declares that the release or continuation of a person on parole or probation is an act of grace of the State. No person has a right to parole or probation, or to be placed in residential confinement, and it is not intended that the establishment of standards relating thereto create any such right or interest in liberty or property.")). In support of this conclusion, the Ninth Circuit Court of Appeals noted that Nev. Rev. Stat. § 213.1099 "does

not use mandatory language,"[9] and the Nevada Supreme Court has held that Nev. Rev. Stat. § 213.1099 "'does not confer a legitimate expectation of parole release and therefore does not create a constitutionally cognizable liberty interest' in parole." Id. at 661–62 (quoting Severance v. Armstrong, 96 Nev. 836, 839, 620 P.2d 369, 370 (1980)); see also Cooper v. Sumner, 672 F.Supp. 1361, 1367 (D. Nev. 1987) ("[N]o Nevada law creates a liberty interest in being granted parole.").

Further, because the grant of parole is discretionary in Nevada, state statutes creating procedures concerning the discretionary grant of parole, such as the parole eligibility provisions in Nev. Rev. Stat. § 209.4465, do not create a liberty interest. See Chaziza v. Stammerjohn, No. 19-17506, 2021 WL 2139080, at *1–2 (9th Cir. May 26, 2021) (holding that Nevada prisoner did not establish a due process claim where NDOC officials failed to property apply Nev. Rev. Stat. § 209.4465 to deduct time credits and calculate his parole eligibility date); see also Fernandez v. Nevada, No. 3:06-cv-00628, 2009 WL 700662, at *10 (D. Nev. March 13, 2009) ("[W]here there is no liberty interest in parole, there is no liberty interest in parole eligibility.").

Because Orr does not have a liberty interest in parole or parole eligibility under either the Constitution or Nevada law, he has not established a due process violation. Thus, Orr is not entitled to federal habeas relief for ground 2.

**IV.    MOTION FOR EVIDENTIARY HEARING**

Orr has filed a motion requesting that this court conduct an evidentiary hearing. (ECF No. 72.) Orr fails to explain why an evidentiary hearing is needed or what evidence would be presented at an evidentiary hearing. Consequently, Orr's request for an evidentiary hearing is denied.

//

---

[9] Nev. Rev. Stat. § 213.1099 provides, in relevant part, that "the Board may release on parole a prison who is otherwise eligible for parole."

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Orr. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. Id.

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 51) is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for an evidentiary hearing (ECF No. 72) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to substitute Calvin Johnson for Respondent Brian Williams and to enter judgment accordingly.

Dated: February 22, 2022.

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE